Next, we'll hear Conrad v. ACE Property & Casual v. Nicholas Gellert It's put to us as though it were a claim on the policy, but it strikes me that it's really more a claim for refusing to sell a policy. Conrad is like somebody who's been on the basis of a $500,000 a year income because he thinks things are really going to turn up for him. The insurance company says, no, we'll sell you disability insurance based on a $100,000 a year income and we'll pay a maximum of $70,000 a year if you're disabled because they're worried about the moral hazard that he'll falsely claim disability or even a $100,000 policy. It just wouldn't sell him the policy for the extra million dollars that he thought he was going to make. I understand your question. A couple of points. First of all, they already sold the policy. The policy here is somewhat unique in that it's a continuing policy. They never approved his expected big increase in revenues because of the mature increase. Well, it's undisputed on the record that his claimed expected income for 2004, the $2.3 million that he expected to earn that year, was a valid number. Oh, I don't know about that. It's undisputed that he claimed he thought he was going to make that. It's undisputed that he subjectively believed he was going to make that, but it's not undisputed that he was going to make that. Nobody ever looked at whether he really was going to make that. They just looked at what he had made and what the formulas were in the handbook. Well, the policy actually says that if you can establish that you will have greater income, we... Not exactly. The phrase in the policy that you're using is part of the definition section, and it's qualified by other parts of the policy, so it doesn't just mean your expectations, hopes, or even reasonably grounded business judgment. It's formulaic. I don't think it's formulaic in that sense. What it says is that... I mean, there's a formula. That's what I mean by formulaic. Well, in the handbook, there's a formula for index. Yeah, and the policy says follow the handbook. Well, the policy never references the handbook directly. In section 10B, which relates to claims procedures, it makes reference to following FCIC procedures, and the handbook we would concede is an FCIC procedure, but that doesn't... It never specifically anywhere in the policy says, for setting the amount of insurance that you can acquire, that we will look to a handbook or any other external document, other than potentially if there was a published CFR that might set the amount of insurance available. Is the answer to that, though, that Congress created the Federal Profit Insurance Corporation through an enabling statute, and there are regulations, presumably, which includes the boldface type that goes into the policy, which then references back to the procedures, which are included in the handbook? So I'm not... Does it matter that it's not published in the CFR? Isn't that good enough for purposes of incorporating... I'm not sure I was completely following when you referenced the bold type print. The bold type print at the beginning of the policy says, you know, we have to follow FCIC regulations, but there is no regulation that specifically says, you know, we are going to publish a Let me ask a question, because I have the same concern that Judge Kleinfeld raised. It seemed to me that Mr. Conrad was disputing, prior to the loss, the amount of coverage that he had under the policy. Isn't that the... I'm looking at the April 20, 2005 letter from Lucan Manhattan, who referenced the prior June 14, 2004 letter. So wasn't there... The timing is a little confusing to me, because I think that he had actually already suffered a loss, but he hadn't made a claim on the loss. The loss was for the 2004 crop. Yeah, but see, that's why they refer to crop years, because it's not annual years. So it gets a little bit... I think he already... Are you talking about apples here? Apples and peaches and fruit. And you normally harvest those in the mid to late summer. Right, but you could already know that you have suffered a loss in advance. So I think the timing... He hadn't made a claim on the loss, is my understanding, but he... But you're right. I mean, the genesis of this dispute is not a loss. It's was he able to purchase the full amount of insurance that he wanted to purchase, and that he views that the policy allowed him to purchase. Apparently, he knew as early as... And I don't have the June 14 letter before me, but apparently, he knew as early as June 14 of 2004 that there was a disagreement with... Was it Rain and Hail or... Right. The insurer, over the amount of the policy, right? Correct. So getting back into Kleinfeld's question, aren't we really dealing here with a refusal to sell issue? I would agree with that characterization. And it fits with our view that the handbook is not properly referenced into this policy, because the handbook is... The only reference to an external document anywhere in the policy is under the claims procedure. I'm having more trouble with it now instead of less. Once we've established, as I think we have, that what the dispute is about is a refusal to sell rather than a refusal to pay according to the policy, then it seems to me the policy is not the critical document, because the policy is a contract. It's not a contract to sell a policy. It's a contract to pay for losses. Well, I... The thing that regulates sale of policies is indeed the handbook. And so the dispute would seem to be about, as I think we've established by our give and take here, refusal to sell and what amount gets sold as specified by the handbook. I disagree with that. I think that the characterization is refusal to sell at the amount of insurance that he... But he'd already bought the policy. The policy begins... As usual, a person has a house fire, and they lose their house, and they lose property in the house, and it's underinsured. The insurance company has provisions in the policy for how much they'll pay. Well, the homeowner can only recover on the policy what the company promised to pay on the policy. Now, they may sue their insurance broker for a policy or reminding them that they ought to raise their policy now that house values have gone up a lot. But that's a different kind of claim. Well, but a couple of important points. Homeowner's policies are annual policies that are renewed every year or renewed as changes in circumstances change such that you apply for more insurance. This policy states right at the top... They're a little more than that. They usually have a built-in inflation provision. Which is sort of an automatic renewal, but they are still issued on an annual basis. Kind of like this one does with the five-year moving average. Right, but this is a policy that is sold as an ongoing obligation until canceled. It says right at the top, this is a continuous policy. It doesn't say this is an annual policy that will be renewed until further notice. It is a policy... That only matters to cancellations. Well, it matters to whether or not there is already a contractual obligation on the insurer. And I would submit there is a contractual obligation. There is a contractual obligation, but for how much? I guess an even closer analogy would be to business interruption insurance, where you insure against loss of revenues. Correct, but still, those tend to be annual policies, sometimes biannual policies, but they are renewed on a periodic basis. There isn't a contractual obligation by the insurer that it will continue to sell insurance and then sets in the policy... So what? They didn't refuse to sell him insurance. Correct. They just refused to sell him as much insurance as he wanted. Well, and we would submit as much as the contract required them to sell him. The contract sets forth that you can buy insurance and we are obligated to sell your insurance at the approved ATR. The contract doesn't say, basically, you can pick the amount. It has a very complicated formula for determining what the amount of the policy will be, doesn't it? Well, it says that we will sell you insurance at the approved AGR. And then it defines approved AGR. Your argument, it seems to me, is forget about the approved AGR. All Mr. Conrad had to do was pick a number and say, I expect revenues of $2.3 million this year and that's the amount of the insurance. Getting back to Judge Kleinfeld's hypothetical, as if he went out on the commercial insurance market and asked Lloyds of London to issue him a business interruption policy for $2.3 million. The only question is, how much is the premium going to be? It's not a matter of him picking a number. It's a matter that he can establish through the adjusters is a valid number that reflects his operations. I think we've sort of gotten off on a tangent here. Isn't this the question? Don't you agree that you're bound by the definition of the policy of whatever the policy says AGR means? Yes. All right. So the question is, what does that mean? Isn't that the issue before us? I agree with that. And the definition of approved AGR is the rolling five-year average adjusted to reflect any increase or decrease. And then in references to Section 5E, and an important part of Section 5 is subpart E, that says if you can establish that your expected revenue is going to be above that average, that your approved AGR will be higher. It uses the word may. But it doesn't mean that it's going to be the $5.3 million or $2.3 million that he picks, does it? Well, it doesn't specify the methodology. We would submit that. That's where you have to go to the FCI handbook, right? If the FCIC handbook is applicable, it tells you how to compute that amount. That's how it was done for Mr. Conrad, was by reference to the indexing formula. Your argument is that that's improper, that it can't be incorporated. Correct. That there's no reference in the policy that you'll incorporate it. And furthermore, that it doesn't follow the language of the definition of approved AGR. Because, for one, the definition or the formula in the handbook has no reference to the future. All it does is apply... I don't understand what you just said. I go through it just the way you say. I look at the definition section for approved AGR, and it says, the simple average of your income history adjusted to reflect expected increase or decrease, see Section 5. That was the definition section. Correct. Then I look at Section 5, which is the report section, and it says your average AGR income history will be adjusted to reflect any reduction in potential revenue. And also, if you can prove your allowable income will be higher, we may establish... may... I never did understand that argument that may means must, but leaving that aside... may establish your approved AGR at a greater amount than average. But then, that's not the end of what it says. It says in the next section, 4, if we establish it at a greater amount than your history, the indexed average expenses will be calculated as follows in this complicated formula. Right, but that's calculating expenses, not the income side of the equation. It never says in the policy how your income should be calculated if... for approved AGR. It only then says, if we increase your... the income side, this is how we're going to calculate your expense side. And your argument is, it's improper to look to Section 10, right? To bring that back into Section 5. Correct. To define the AGR. Correct, because... How the AGR should be computed. Because Section 10, first of all, only deals with procedures. It basically sets forth timelines for submitting a claim, timelines by which the insurance company has to respond, and then it says... Section 5 only deals with the reports. Right, but Section 5 is specific... It doesn't say we have an obligation to sell you insurance. It just deals with what your annual reporting duties are, just like with inventory. Well, we've gotten beyond the have to sell you insurance business. We're talking about the definition of AGR now, right? Correct. And what AGR means. Right. And approved AGR means... The way I understand this, the way this would work, is if you can't show that you're going to have any change from average, then you get average. If the insurance company or you concede that you're going to have something below average, then you get exactly that. You need us to take the word may out of the sentence in 5, and you need us to take this word approved out of the sentence in 5, because approved implies some judgment on the part of the approver, and may implies some discretion on the part of the approver. Well, first of all, my puns concede an appeal that may means must as the district court concluded. Because otherwise, the promise to otherwise in the policy in Section 6 that they'll sell insurance at the approved AGR would become illusory if they could just say, you can show us whatever you want, but we've made this promise, but we don't have to do anything to honor that promise. The word approved... just makes your interpretation of what their obligation is illusory. Well, I mean, then they could just have all this discussion about having the, that, you know, if you establish a higher income that there will be an adjustment wouldn't have to be in the policy at all. The insurance company could always have the discretion to sell more insurance like in your homeowner's hypothetical. So, but this is different. Here, the contract requires certain action and to then sort of say, with one hand, we're required to sell your insurance at a certain level but on the other hand to say, well, we'll only do it at our discretion makes the first promise illusory and thus under, you know, normal... It's only illusory if there's a promise. I don't see where there's a promise. The question isn't whether the obligation to sell more insurance on more crops than this farmer has ever managed to sell it's whether there's such a promise in the first place. Well, first of all, I think we have to get away from that this is just a farmer making a claim that's high in the sky hope that isn't... I don't know why we have to get away from it. I mean, the guy makes 1.6 million growths a year, roughly over the years and he says but now, this is different my old trees have been getting old not producing as much crop, I got these new trees and they're going to mature and I'm going to have a better year by a vast amount than I've ever had in my life I don't see why we have to get away from calling that high in the sky. Well, because he established it and the insurance company never disputed that he established that his farm had matured and he was expecting this increase in income and the record in through his supplemental What they said was, well, that's very nice that you feel that way but we're not selling you that much insurance. Well, but they never said that they never based the reason for not selling more insurance on that. Isn't that why they have the five year rolling average in the policy just to address the fact that you can have variations from year to year based on weather market conditions consumer demand If they elected to simply have a policy that said we will sell you insurance at the rolling average, then that argument would have some legs, but that's not what the policy said if they were concerned that there would be proof problems, for instance and we'd say we're only going to look at history for what we do in the future but that's not what they've done. But all they said was we may approve To me, that implies it's up to us whether to approve and we may or may not I don't know how else to read the words But the definition of approved AGR says we will sell you on the rolling average adjusted for any increase or decrease. By saying we may do it, removes that promise to adjust for any increase It's right there in the definition Read me the words that you think are the promise The policy right here, read me the words that you think are the promise In the definition of approved AGR it defines it as the simple average, adjusted to reflect Where's promissory language in that? Well, you have to then go to section 6, where it talks about Section 6, not 5? Correct Okay 6 is annual premium and administrative fee That's why I thought you meant 5 Right I'll look at that before I stand up for rebuttal And I also thought you meant 5 because it says 5 there in the definition section that you just read I'll look for the reference You're saying they broke their promise I can't find the promise Well, look at here If you look at section 10 B, our duty is 1 If you have complied with the policy provision we will pay your loss within 30 days I think that's a promise Right I would agree with Judge Kleinfeld that's the promise to make the claim on the amount of insurance that is sold Judge Kleinfeld's question is where's the promise to sell the insurance at a particular level and I will find that and provide it on rebuttal Thank you Thank you, your honors My name is Sean Bouts and I represent Ace Property Casualty Insurance and Rain and Hail LLC I think there's some confusion with regard to what the issues are and how we get about what the premium and what the coverage is at the beginning in this circumstance where we do have a claim loss this was a loss that's what we're talking about and I think we're also looking at from the perspective of a reasonable interpretation of all the policy terms and not just in isolation of one particular term which Mr. Conrad will have you believe it's just the definition of AGR there are other policy terms that apply most notably section 10b3 which references at the time of a loss Ace Property Casualty Insurance will adjust the claim based upon the claim procedures claim adjustment and other procedures approved by the FCIC and that's exactly what they did in this case No, but what's your response to the argument that well that's only how you go about processing the claim it has nothing to do with the definition of the AGR and how you set the AGR I think the difference comes in to play that there is the calculation of the approved AGR is not anywhere within the policy during a time of a claim that is within the handbook and the handbook was created by the FCIC to handle the particular claims just like that of Mr. Conrad Could I ask you something? Usually when you get insurance for a greater amount you pay a greater premium and as I understand the handbook that's the way it works in this case Am I correct in understanding he didn't pay a premium he wasn't approved for the 2.3 million or something like that so he didn't pay a premium on the 2.3 million then he makes a claim on the 2.3 million and says you can take the premium addition out of it after you pay me He didn't make a claim He didn't make a claim on 2.3 million he makes a claim for his crop loss the average is based upon a 5 year rolling average there is a lag year so the 2.3 million I don't think you understood my question I'm sorry What I want to know is did he ever pay a premium for a policy that would ensure against the loss of the much better crop he expected or did he just offer to have the premium taken out of whatever the insurance company paid him If he was to get the 2.3 million dollars worth of coverage he would have additional premium that he would have to pay Who calculates the premium It's not his job to calculate the premium What happens actually is at the end of the year in December 2003 when he's discussing with his agent it's actually through the risk management agency portion of the STIC it's actually done through a website they put in all the information into the website and the RMA calculates the premium So he pays whatever premium he's told to pay Right, and that premium is paid at the end of the crop year Yeah Correct He's purchasing insurance for the 2004 crop year in December 2003, right He's in 2003 but because of the lag year and not knowing exactly what's going to occur with his crops because he has to plant the crops he has to harvest the crops and have production of the crops and find out what kind of revenue they're going to generate that's why there's the lag year so whatever coverage he would have then the premium is actually paid later on if there was some carryover from the previous year which I don't know the exact numbers but there's a balance back and forth and a credit and debit versus what the exact premium he would owe It's like a retrospectively rated premium, isn't it Correct So did he know by June 14, 2004 what the premium and the amount of the policy was at that point in time Back in December, he has to sign off on what the premium is going to be for that particular year based upon the figures that are given to them by the risk management agency after they calculate that so it would have been well before that So does the record show that he knew in December of 2003 the amount of the policy based on the adjustment to AGR that Rain and Hail was selling him and the amount of the premium that he would pay for that amount of coverage There's a reference in the record and I don't have the before me with regard to the calculation of premium that was done beforehand I don't have the exact date but that would have been before the July 19th letter that he sent to his agent when there was dispute over the coverage but it's never been a dispute about the premium it's been a dispute about whether he had coverage for the crop loss I'm sorry, your answer confused me. You told me that there's some website that you go to in December of 2003 and at that time what happened So the farmer, Mr. Conrad walks into the agent's office and says I expect next year to be 2.3 million They take the previous five years Which averaged 1.6 Correct, 1.6 They put those calculations into the SCIC website to calculate the premium and they come up with the number That number then is given to Mr. Conrad Is that number somewhere between 1.6 and 2.3 million? As far as the premium? No, the amount of the insurance that he's getting The amount of insurance doesn't get to 2.3 million because there's a lag year The only way that he's going to get to 2.3 million is if the previous five years were 2.3 million or higher That's the only way he's going to get to that average There was an adjustment made to the amount of the premium In December of 2003 he paid more than he paid in December of 2002 Right, with regard to premium The premium Then the question becomes does he not know then until the 2004 crop year how much insurance he actually purchased with that increased premium It's not how much insurance that he purchased It's how much the premium exactly will be because the expected income could be different because we don't know exactly what he's planted Oh, I see, so it is retrospective in the sense that the premium might actually be higher if he gets a really good year Could be higher, could be lower And that's the distinction when there's a loss What happens is the adjuster goes out to the It's an experience-based premium Right, exactly, the adjuster goes out to the crops and says, okay, what did you plant Did you plant more peaches? Did you plant more apples? Did you plant more fruit? And say, well, yes you did, no you didn't Well, what was the damage? And looks at it from the perspective of the time you have a claim loss to figure out what it is And that's what happened They went out and said, okay, here's the claim loss And it was 1.6 million And there was an expected increase And they came up with, it was only a little less than $20,000, but there was an expected increase based upon the allowable income But the fact is it's a rolling average And you never get to the 2.3 million in that five years because that's a leg year Now, in 2005 that 2.3 million would be calculated into it but not in the current crop years in this circumstance And I think And that, all that happens with the AGR being computed according to the handbook Correct And the AGR, and the reason why it's that is because, one, you have a loss and that's the circumstance, and that's what gets you under 10b-3 to follow the FCI claim procedures and get to the handbook You can't find the calculation of approved AGR in the policy You can find it for allowable expenses but it's not for the AGR because in this case or the approved AGR, because there was a claim loss and that's how you get to the handbook And I think we need to keep in mind what we have here We have a reinsurance policy that the FCIC has said we'll reinsure it and we're ultimately responsible for paying it ACE and Raymond Hale are basically a service provider if you will They're in the middle, they adjust the claims, they handle the claims and at the end of the day, they go to the FCIC and say pay us back for what we owe I mean, it is a classic reinsurance Correct Only the government is the reinsurer Correct, absolutely And I think the circumstances here There were some questions with regard to the CFRs Well, the CFRs are referenced in the definition of policy It references 7 CFR subchapter 4 which that section under 400.168 subsections A and D talk about the obligations of an insurer and in this case, those obligations say to follow the administrative procedures as well as only the loss adjustment procedures and methods approved by the FCIC and that's exactly what ACE did in this case They went to the procedures that the FCIC created in the handbook and they adjusted the claim properly So, we may have as Judge Tashima aptly observed, we may have gotten a little bit off track when we tried to push Mr. Gellert into characterizing this as a sales issue as opposed to, it really is a claims issue Absolutely Because you can't know how much you've actually purchased until you actually suffer a loss Interesting insurance And I think the other thing too is if you reference section 11A1 which is the claim for indemnity, under 11A1 it says, in the event of loss of revenue covered by this policy, we will settle your claim as follows, determine your approved AGR. At the time of loss they're going to determine your approved AGR and that's what they did. And they did it based upon the claim procedures required of them by the FCIC in the handbook. And that's exactly what occurred in this case Now, was that were you just quoting a provision of the policy? That's correct, Your Honor And where is that? It's under section 11A1 Okay, go ahead Unless there are any other questions I don't have any further. I would just add that we believe the district court was correct in their ruling and we would ask the court to affirm that decision Thank you, counsel Thank you Counsel? Thank you In addition to the You've gone way over time, but it's really an interesting case. Take two minutes I misunderstood the time then. I'm sorry. I'll be very brief Take two minutes anyway Under section 7D of the policy it says your revenue guarantee in other words, the amount of insurance you'll have will be determined by multiplying your approved AGR by the coverage level you elect similar to what you posited with respect to disability insurance, you can purchase different percentages of insurance That is not in dispute here, but that's where the promise lies that your approved AGR is determinative of how much insurance is available to you I'd also just like to comment on one thing which is the upward adjustment that did occur here really was by happenstance. It was 1% If Mr. Conrad's historical numbers still had had an average of 1.6 but they had been 1.6 every year, instead of fluctuated up and down, applying the index formula, he would have gotten zero adjustment under the formula in the handbook. So the fact that ACE gave him a $19,000 adjustment, a 1% adjustment is not honoring the promise in the policy to upward adjust to reflect any increase in income This probably has nothing to do but just out of curiosity what was the basis for the law? Was it weather? It was weather related Thank you Thank you counsel This was a very interesting and enlightening argument Appreciate it We'll have a 10 minute recess before we hear the next case
judges: Kleinfeld, Tashima, Tallman